# **EXHIBIT A**

**AFFIDAVIT OF JONATHAN HUBER**

STATE OF WASHINGTON   )
                      )  ss
COUNTY OF KING        )

I, Jonathan Huber, a Task Force Officer with the Federal Bureau of Investigation, having been duly sworn, state as follows:

## I.   INTRODUCTION

1.   I am a Detective with the Seattle Police Department and have been so employed since July 1996. I am also a Task Force Officer with the Federal Bureau of Investigation ("FBI") and have been so employed since 2012. In that capacity, I investigate violations of the Controlled Substances Act, and related violations.

2.   To become a Police Officer, I attended the Washington State Criminal Justice Training Academy. After the successful completion of the academy I worked as a patrol officer for approximately ten years. In 2006 I was made a member of the North Precinct Anti-Crime Team. In 2009 I became a detective with the Seattle Police Department Gang Unit. In 2012 I became a Task Force Officer with the FBI Safe Streets Unit. My training has included the attendance and successful completion of Detective School, Undercover School, Surveillance School, and Anti-Crime Team Training.

3.   During my career, I have been involved in over 1500 narcotics arrests as either the primary or assisting officer/detective. I have participated in investigations involving organizations trafficking controlled substances that have resulted in arrests of drug traffickers and seizures of controlled substances. In addition, I have participated in several wire intercept investigations. Because of this experience and training, I am familiar with common methods of investigating drug trafficking and manufacturing organizations, and have become familiar with the methods of operation of drug traffickers and manufacturers, including, but not limited to: their methods of importing, exporting, storing, concealing, and packaging drugs; their methods of transferring and distributing drugs; their use of cellular telephones and telephone pagers; their use of

numerical codes, code words, and counter surveillance; and other methods of avoiding detection by law enforcement.

4. I am familiar with the various methods of packaging, delivering, transferring, and laundering drug proceeds. Additionally, through training and experience, I can identify illegal drugs by sight and texture. I am trained to use a field test kit to identify the presumptive presence of controlled substances. I have become familiar with common slang terms and codes used by drug traffickers and their associates to refer to drugs, money, guns, vehicles, compartments, and other things related to their drug trafficking. I have learned how they attempt to thwart law enforcement by using code terms, multiple cell phones, concealed compartments, "stash houses," and other means. I have become familiar with the ways in which drugs commonly are transported, stored, and sold, and in what quantities and at what prices in this area, and how members of a conspiracy communicate with each other. I am also familiar with common ways in which drug traffickers attempt to profit from their illegal activities, by hiding drug proceeds in various places to conceal the illegal source or their ownership, including hiding and transporting bulk cash, sending funds through wire transfers or bank accounts in other persons' names, or investing in assets placed in other persons' names. Throughout my law enforcement career, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local narcotics officers.

## II.   PURPOSE OF AFFIDAVIT

5. I make this affidavit in support of motions for entry of protective orders that would allow the United States to maintain custody of the following forfeitable property pending resolution of the criminal cases <u>United States v. Cheatham, et al.</u> (W.D. Wash. Case No. CR18-131-RAJ) and <u>United States v. Morgan, et al.</u> (W.D. Wash. Case. No. CR18-132-RAJ):

    a. Approximately $8,175 in U.S. currency, seized from Defendant Johnny Davis on or about June 6, 2018, from a residence in Kent, Washington (the "**Subject Currency**"); and

      b. One Sig Sauer model P220 .45 caliber semiautomatic pistol bearing serial number G232888, and any associated ammunition (the "**Subject Firearm**").

6. The **Subject Currency** and the **Subject Firearm** (collectively, the "**Subject Property**") were seized during the execution of search and seizure warrants at locations in the Western District of Washington. Those warrants, which are described further below, were issued on probable cause to believe that the searches would yield, among other things, evidence and fruits (including currency) of violations of 21 U.S.C. § 846 (conspiracy to distribute controlled substances), 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime), and 18 U.S.C. § 922(g) (felon in possession of a firearm).

7. Following the seizure of the **Subject Property**, the Drug Enforcement Administration ("DEA") initiated administrative forfeiture proceedings against these assets. Administrative claims have been filed against both assets (neither of the claims were filed by defendants named in the above-described criminal cases). Currently, the **Subject Currency** is in the custody of the United States Marshals Service ("USMS"), and the **Subject Firearm** is in the custody of the DEA.

8. The United States is pursuing forfeiture of the **Subject Property** in these criminal proceedings, and I submit this affidavit to provide facts demonstrating probable cause for the continued restraint of these assets. Because I am submitting this affidavit for that limited purpose, I am not including every fact known to me about the defendants, the assets in question, or the larger investigation. The facts in this affidavit are drawn from my personal observations based on my involvement in the underlying investigation, my training and experience, and information I have obtained from other law enforcement officers.

### III. FORFEITURE AUTHORITY

9. Under 21 U.S.C. § 853(a), any "person convicted of a violation of [among other offenses, 21 U.S.C. §§ 841 or 846] punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—(1) any

property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; [and] (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation."

10. Under 18 U.S.C. § 924(d)(1), "[a]ny firearm or ammunition involved in or used in any knowing violation of . . . [18 U.S.C. §§ 922(g) or 924] . . . shall be subject to seizure and forfeiture."

11. Under 28 U.S.C. § 2461(c), "[i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case. . . . The procedures in [21 U.S.C. § 853] apply to all stages of a criminal forfeiture proceeding."

12. Under 21 U.S.C. § 853(e)(1)(A), "[u]pon application of the United States, the court may enter a restraining order . . . or take any other action to preserve the availability of property described in [21 U.S.C. § 853(a)] for forfeiture . . . upon the filing of an indictment or information charging a violation of this subchapter . . . for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section."

### IV.   SUMMARY OF PROBABLE CAUSE

13. The criminal cases referenced above arise out of a joint investigation by the Seattle Police Department ("SPD"), FBI, and DEA. These agencies, together with other state and federal law enforcement agencies, have been investigating a Drug Trafficking Organization ("DTO") headed by Defendants Michael Scott Morgan Jr. and Charles Roland Cheatham. During the investigation, agents debriefed a number of cooperating witnesses, conducted numerous hours of surveillance, and utilized various other law

enforcement techniques. Those techniques included numerous controlled buys and seizures from some of the defendants.

14. The investigation ultimately led to the use of court-authorized Title III wire intercepts. In total, agents received authorization to intercept fourteen separate target telephones, with interceptions occurring between September 2017 and March 2018. The users of these telephones were identified after conducting physical surveillance in conjunction with intercepted calls and/or monitoring location data for the target telephones. The wiretaps and other investigative techniques revealed a massive conspiracy to distribute large amounts of cocaine and heroin, as well as smaller but still significant amounts of prescription opiates, methamphetamine, and marijuana.

15. The investigation also showed that many of the conspirators had close ties to Seattle-area street gangs, and in particular to the "East Union Street Hustlers" ("EUSH") and the "Deuce-8" gangs, both local sets of the Black Gangster Disciples ("BGDs"). Members of the conspiracy were also intercepted discussing firearms as well as past violent acts.

16. A more complete description of the underlying investigation is contained in the 217-page affidavit submitted in support of the application for search and seizure warrants issued in W.D. Wash. Case No. MJ18-246-BAT (hereafter, the "Search Warrant Affidavit"), which I incorporate herein by reference.

17. More than one hundred search warrants were executed at the time of the various defendants' arrests on June 6, 2018, resulting in the seizure of significant amounts of drugs, dozens of firearms, and hundreds of thousands of dollars of U.S. currency—including the **Subject Property**—as well as the probable cause arrests of other co-conspirators.

18. Based upon my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I know that drug traffickers frequently keep on hand amounts of United States currency in order to maintain and finance their ongoing narcotics business. They commonly deal in currency

because of its untraceable nature. They sometimes convert their illicit currency into currency equivalents such as cashier's checks and money orders. Traffickers often conceal in secure locations, such as their residences and vehicles, currency, financial instruments, precious metals, jewelry, and other items of value which are the proceeds of drug transactions, and evidence of consequential financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in drug trafficking activities, and financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, and other records showing the management of such assets. Traffickers also often have money counters. Further, drug traffickers often maintain weapons, including guns, ammunition, and body armor, in secure locations such as their residences and vehicles in order to protect their drugs and drug proceeds.

### A.    Seizure of the Subject Currency

19.    Discussed below are circumstances regarding the seizure of approximately $8,175 in U.S. currency from Defendant Johnny Davis on June 6, 2018, in Kent, Washington (i.e., the **Subject Currency**).

20.    In summary, based upon evidence described herein and in the Search Warrant Affidavit, investigators believe that Davis was an ounce-level redistributor of controlled substances. Further evidence of Davis's activities related to drug trafficking is described at length in the Search Warrant Affidavit at paragraphs 617–18, 620, 633–47, 657–58, 662–666, and 696–98.

21.    As previously noted, agents obtained numerous search warrants in connection with this investigation, which were executed on June 6, 2018. One of those warrants pertained to a residence associated with Davis located in Kent, Washington. The Kent residence is further addressed in the Search Warrant Affidavit at paragraphs 633–47.

22.    Agents arrested Davis on June 6, 2018. During a search of the Kent residence, Davis told agents that he had sold small amounts of heroin, methamphetamine,

and cocaine. Davis further remarked that he did not make much money from his drug dealing, and he also told agents that he kept drugs in a dresser in his bedroom. Agents subsequently located throughout the residence various items appearing to be controlled substances, including cocaine, heroin, methamphetamine, and marijuana. Agents also recovered U.S. currency—cumulatively amounting to approximately $8,175 (i.e., the **Subject Currency**)—from various locations within the residence, including Davis's bedroom and from the pocket of a pair of pants that appeared to belong to Davis. A photograph of a portion of the **Subject Currency** is included below.

23. Agents seized the **Subject Currency** as proceeds of, and/or property used to facilitate, drug trafficking activities. The **Subject Currency** was later transferred to, and remain in the custody of, the USMS.

B. **Seizure of the Subject Firearm**

24. Discussed below are the circumstances regarding the seizure of a Sig Sauer model P220 .45 caliber semiautomatic pistol bearing serial number G232888 and associated ammunition (the "**Subject Firearm**"). The **Subject Firearm** was seized during a search of a vehicle registered in the name of Defendant Alonzo Williams Baggett.

25. In summary, based upon evidence described herein and in the Search Warrant Affidavit, investigators believe that Baggett was a multi-ounce cocaine redistributor. Further evidence of Baggett's activities related to drug trafficking—and the vehicle from which the **Subject Firearm** was seized—is described in the Search Warrant Affidavit at paragraphs 126–42.

26. On June 6, 2018, agents conducted a search of the vehicle registered to Baggett. During the search, agents recovered the **Subject Firearm** (which was loaded) from a backpack located in the vehicle's rear seat. From the same backpack, agents additionally recovered currency as well as various substances that field tests identified as heroin and cocaine. A photograph of the **Subject Firearm** is included below.



27. Based upon my review of records pertaining to the investigation described herein, I know that Baggett has previously been convicted of crimes punishable by imprisonment for a term exceeding one year, including:

   a. *Attempting to Elude a Pursuing Police Vehicle,* on or about March 2, 2007, in the Thurston County Superior Court, case number 06-1-00881-6;

   b. *Unlawful Possession of a Firearm in the First Degree*, on or about March 2, 2007, in the Thurston County Superior Court, case number 06-1-00881-6;

     c. *Unlawful Possession of a Controlled Substance with Intent to Deliver*, on or about March 2, 2007, in the Thurston County Superior Court, case number 06-1-00881-6;

     d. *Violation of the Uniform Controlled Substances Act*, on or about June 17, 2003, in the King County Superior Court, case number 03-8-01030-0;

     e. *Violation of the Uniform Controlled Substances Act*, on or about December 18, 2002, in the King County Superior Court, case number 02-8-03896-6; and

     f. *Violation of the Uniform Controlled Substances Act*, on or about December 18, 2002, in the King County Superior Court, case number 02-8-00903-6.

28. Agents seized the **Subject Firearm** as a firearm involved or used in a knowing violation of 18 U.S.C. § 922(g) and/or 18 U.S.C. § 924(c). The **Subject Firearm** is now in the custody of the DEA.

///
///
///

## V. CONCLUSION

29. For the reasons described above and in the incorporated Search Warrant Affidavit, I submit that there is probable cause to believe that the **Subject Property is** subject to forfeiture pursuant to 21 U.S.C. § 853(a) (facilitating property for, and/or proceeds of, a conspiracy to distribute controlled substances) and/or 18 U.S.C. § 924(d)(1) (firearms or ammunition involved or used in a knowing violation of 18 U.S.C. §§ 922(g) and/or 924). The **Subject Property** should therefore remain in the custody of the United States pending resolution of the criminal cases.

Jonathan Huber, Affiant
Task Force Officer, FBI

SUBSCRIBED and SWORN to before me on this 20th day of December, 2018, by FBI Task Force Officer JONATHAN HUBER.

Print Name: DONNA RAE TAYLOR
Notary Public in and for the
State of Washington, KING COUNTY
Commission Expires: 1/24/2019